UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAREE MILLER #326122,

    Plaintiff,

v.

SHAWN BREWER, ROBIN
HOWARD, and RENATA PATTON,

    Defendants.

Case No. 2:15-cv-14164

Honorable Sean F. Cox
Magistrate Stephanie Dawkins Davis

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>2966 Woodward Ave.<br>Detroit, MI 48201<br>(313) 578-6824<br>dkorobkin@aclumich.org<br>msteinberg@aclumich.org<br>*Attorneys for Plaintiff* | DICKINSON WRIGHT PLLC<br>Daniel D. Quick (P48109)<br>Kathleen A. Cieslik (P80024)<br>Alma Sobo (P81177)<br>2600 West Big Beaver Rd, Ste. 300<br>Troy, MI 48084<br>(248) 433-7200<br>dquick@dickinsonwright.com<br>kcieslik@dickinsonwright.com<br>asobo@dickinsonwright.com |
| Brandon Waddell (P81494)<br>Michigan Dep't of Attorney General<br>State Operations Division<br>P.O. Box 30736<br>Lansing MI 48909<br>(517) 373-6434<br>*Attorney for Defendants* | Emily L. Burdick (P81178)<br>Angelina R. Irvine (P81712)<br>500 Woodward Ave., Ste. 4000<br>Detroit, MI 48226<br>(313) 223-3500<br>eburdick@dickinsonwright.com<br>airvine@dickinsonwright.com<br>*Attorneys for Plaintiff* |

## PLAINTIFF SHAREE MILLER'S TRIAL BRIEF

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND .........................................................................................1

    A.   The Prisoner Observation Aide Program ...............................................1

    B.   Miller Reported Bielby and Martin Incidents Internally ......................2

    C.   Defendants Terminated Miller For Reporting Inmate Abuse Externally
        ...............................................................................................................3

III. ARGUMENT................................................................................................4

A.   Defendants Violated Miller's First Amendment Rights By Terminating Her Employment as a POA Based Upon Her Exercise of Her Constitutional Rights
     ...................................................................................................................4

        1.   Miller Engaged in Constitutionally Protected Speech By Reporting the Bielby and Martin Incidents.................................5

        1.   Compensatory or Presumed Damages ........................................8

        2.   Punitive Damages .......................................................................9

BLOOMFIELD 99997-1644 2412980v3

Pursuant to the Court's July 2, 2019 Order Regarding Trial, (DE 101), Plaintiff Sharee Miller ("Miller"), by and through her counsel, Dickinson Wright PLLC, and the American Civil Liberties Union Fund of Michigan, submits this trial brief ("Brief") to address the known legal issues likely to arise at trial, scheduled for July 23, 2019.  This Brief is submitted without prejudice to Miller's rights to assert other appropriate objections.

## I.   INTRODUCTION

Miller was terminated from her job as a Prisoner Observation Aide ("POA") at Women's Huron Valley Correctional Facility ("WHV") for reporting abuse, neglect, and inhumane treatment of inmates externally to professional advocates after WHV officials repeatedly ignored Miller's internal reporting.  Evidence will show that Miller's belief that WHV officers were mistreating prisoners was reasonable, and that Defendants violated Miller's First Amendment rights by terminating her in retaliation for exercising her Constitutional rights.

## II.   BACKGROUND

### A.   The Prisoner Observation Aide Program

Since 2012, MDOC has employed POAs to observe at-risk WHV prisoners. POAs continuously observe the mentally ill prisoner, log their observations, and contact a corrections officer or other staff if the prisoner is in distress, or some other emergency arises.  POA rules and procedures require POAs to maintain appropriate confidentiality of their observations.  The POA confidentiality clause states:

1

> Confidentiality is very important in prisoner observation. Relevant information should only be shared with staff or the next shift of Prisoner Observers. Inappropriate sharing of information about the observed prisoner will be grounds for immediate removal from the job. Prisoner Observers are only to discuss what the assigned prisoner says or does or what is said/done to the prisoner with housing staff on the unit or relief observers (staff or prisoner).

Miller began working as a POA on March 5, 2014, earning $42 per month. Miller was trained by Defendant Patton, who supervised the POA program.

### B. Miller Reported Bielby and Martin Incidents Internally

During a POA shift in spring 2014, Miller witnessed officers abuse a mentally ill inmate, Rochelle Bielby. Corrections officers stripped Bielby naked, cuffed her wrists and ankles, and hog-tied them behind her back, and left her lying on her stomach in a cell. Officers advised Miller that Bielby had to remain in that position because she struggled and fought her restraints. Bielby remained hog-tied and screaming out in pain for nearly 5 hours. During this time, Miller observed Bielby sliding off her bed. If Bielby had fallen, she would have sustained serious injuries.

Miller made several attempts to address the Bielby incident internally. Miller spoke with Defendant Patton, who indicated that the officers' conduct was appropriate. Miller also sent a kite (written request) to Defendant Howard, but received no response. Finally, Miller contacted advocates outside WHV for aid. The advocates reported the abuse to public officials and agencies, who initiated investigations. Thereafter, Defendant Howard met with Miller but did not reprimand

2

her in spite of her external reporting. Instead, Defendant Howard simply encouraged Miller to report to outside advocacy groups truthfully.

During a POA shift in mid-June 2014, Miller witnessed officers abuse an elderly inmate, Darlene Martin. Martin tried to splash water out of the toilet in her cell to drink because she could not operate the sink, and officers turned off all water to her cell. After Miller advised the officers that Martin was begging for water, they placed a small paper cup of water in Martin's cell every few hours. Over the course of several days as a POA for Martin, Miller sent multiple kites to Defendants Patton and Howard regarding Martin's deteriorating condition. Miller's kites were ignored.

Martin's condition worsened: Miller observed Martin foaming at the mouth, vomiting, and unresponsive. The nurse on duty only stopped in Martin's cell occasionally to administer a shot without taking vital signs or engaging Martin in any conversation, and dismissed Miller's concerns. Martin went into cardiac arrest and was rushed to the hospital. Martin remains in a vegetative state. Miller feared other mentally ill women at WHV were at risk of similar mistreatment, and was compelled to contact professional advocates outside WHV for help.

### C.   Defendants Terminated Miller For Reporting Inmate Abuse Externally

On July 16, 2014, Defendant Patton informed Miller that she was terminated at the directive of Defendant Howard. Documentation regarding Miller's termination, signed by Defendant Patton, states:

3

>Prisoner Miller 326122 began working as a prisoner observation aid on 3/5/2014.  On 7/11/2014, classification was notified by Inspector Howard that prisoner Miller has engaged in sharing confidential information regarding prisoners she had observed with persons other than staff or a relieving POA.  According to Prisoner Observation Rules and Procedures signed by prisoner Miller on 4/8/2014 Section "Away from the Job" Paragraph 1 it states that "Confidentiality is very important in prisoner observation.  Relevant information should only be shared with staff of the next shift of prisoner Observers.  Inappropriate sharing of information about the observed prisoner will be grounds for immediate removal from the job.  Prisoner Observers are only to discuss what the assigned prisoner says/does or what is said/done to the prisoner with housing staff on the unit or relief observes (staff or prisoner)."  Based on information received from Inspector Howard's office, it has been determined that prisoner Miller did not comply with the above confidentiality statement, thus she is being removed from the POA position effective immediately.

### III.  ARGUMENT

**A.     Defendants Violated Miller's First Amendment Rights By Terminating Her Employment as a POA Based Upon Her Exercise of Her Constitutional Rights**

Retaliation against a prisoner based upon her exercise of a constitutional right violates the Constitution.  *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002).  A First Amendment retaliation claim is established where (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated *at least in part* by the protected conduct.  *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

4

### 1. Miller Engaged in Constitutionally Protected Speech By Reporting the Bielby and Martin Incidents

Protected conduct is an individual right protected by the Constitution with which the government generally cannot interfere. *Thaddeus-X*, 175 F.3d at 387. Defendants fired Miller because she spoke out on an issue of public concern, and as applied to Miller in this situation, the POA confidentiality rule cannot, consistent with the First Amendment, justify Defendants' retaliation. Determining whether Miller's speech was protected by the First Amendment requires application of the tests articulated by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Turner v. Safley*, 482 U.S. 78 (1987). Evidence will show that both standards are met.

### a) Evidence Will Show That Miller's Speech is Protected Under the *Pickering* Test

The Supreme Court declared in *Pickering* that an employer's interest in regulating employees' speech must be balanced against the employee's interest as a citizen in commenting on matters of public concern. *Pickering*, 391 U.S. at 568. The Sixth Circuit in *Delvin v. Kalm*, 531 Fed. App'x. 697, 704 (6th Cir. 2013), explained the *Pickering* analysis as follows:

> *First*, the plaintiff's speech is only entitled to protection if it "addressed a matter of public concern." *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)). *Second*, the plaintiff must show that the speech was made "outside the duties of employment." *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). *Third*, "the court must balance the interests of the public

5

employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rodgers*, 344 F.3d at 596 (quoting *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568 (1968)). *Fourth*, the plaintiff must show [that] his "speech was a substantial or motivating factor" in the employer's decision to terminate him.

*First*, Miller was voicing concerns regarding the health and safety of Bielby and Martin as a citizen on a "matter of public concern." *Second*, Miller corresponded about the incidents outside of her official employment duties as a POA. *Third*, Miller's interest in speaking out about mistreatment of inmates outweighs WHV's interest in "promoting the efficiency of the public services it performs through its employees." *Leary v. Daeschner*, 228 F3d 729, 737 (6th Cir. 2000) (quoting *Pickering*, 391 U.S. at 568)). *Fourth*, testimony will show that Miller was terminated as a *direct result* of reporting inmate mistreatment to outside advocates.

    **b) Evidence Will Show That Miller's Speech is Protected Under the *Turner* Test**

Under *Turner,* the Court must assesses the validity of the POA confidentiality policy in the wake of its infringement upon established constitutional rights. *Turner* articulates four factors to be used in determining the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising rights that remain open to inmates; (3) whether accommodating the asserted right will have a significant "ripple effect"

6

on fellow inmates or prison staff; and (4) whether there is a ready alternative regulation that fully accommodates the prisoners' rights at a *de minimis* cost to the valid penological interest. *Id.* at 89-90. Additionally, even when a prison regulation is not wholly invalid on its face, *Turner* analysis may demonstrate that its application in a certain instance is unreasonable and, thus, unconstitutional. *Flagner v. Wilkinson*, 241 F.3d 475, 483 n.5 (6th Cir. 2001).

The *Turner* criteria is satisfied. *First*, Dr. Jeffrey Metzner's testimony will show that there is no valid, rational connection between WHV's interest in protecting an inmate's privacy and preventing POAs from disclosing abuse and neglect of those inmates. The broad (and unclear) confidentiality language, as applied to this case, is an exaggerated response to any real prison concern. *Second*, as implemented, the confidentiality policy leaves POAs with no alternative avenue available for reporting inmate abuse and neglect if it is not addressed by WHV officials. *Third*, allowing POAs to report abuse and neglect to outside authorities, especially when attempts at internal reporting are ignored, would not have significant ramifications on the liberty of others or on the use of the WHV's resources for preserving order as WHV could screen meritless complaints and investigate concerns needing further inspection at minimal cost. *Fourth*, WHV could devise procedures for reporting abuse to outside authorities when internal reporting is insufficient, while still prohibiting POAs from "inappropriately"

7

disclosing confidential information, for instance in situations that do not involve abuse or do not involve initial attempts to address problems internally.

### B. Miller is Entitled to Compensatory and Punitive Damages, and Declaratory Relief as Redress for Defendants' Constitutional Violations

The trier of fact must tailor compensation "for injuries caused by the deprivation of constitutional rights" according to the particular interests being protected. *Carey v Piphus*, 435 US 247, 259 (1978). Miller will present evidence and testimony showing that Defendants terminated Miller in retaliation for reporting inmate abuse to advocates outside WHV after repeatedly ignoring misconduct Miller reported internally, and despite the fact that Defendant Howard encouraged Miller to report truthfully to outside advocacy groups.

#### 1. Compensatory or Presumed Damages

Fair and reasonable compensatory damages are available for First Amendment violations under 42 U.S.C. § 1983 where the plaintiff's injury was caused by the violation of a constitutional right. *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015); *Waije v. City of Winchester, Kentucky*, 927 F.2d 10 (6th Cir. 1987).

Miller will seek compensatory damages based upon her wrongful discharge as a POA in retaliation for reporting inmate abuse externally. Miller's testimony as to the effect of these violations, including the inability to procure comparable prison employment, will form the basis of her proofs. Miller is entitled to $2,562.00 in

8

compensatory damages, which she would have earned as a POA but for her wrongful discharge. Should the Court conclude that compensatory damage cannot be measured, Miller will seek presumed damages.

### 2. Punitive Damages

Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997) (*quoting Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983)). Punitive damages may also be awarded "for the purpose of deterring or punishing a violation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 257 n. 11 (1978); *see also In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1272 (2d Cir.), *cert. denied*, 502 U.S. 920 (1991).

While punitive damages are difficult to estimate, the need for deterrence in this case is plain. Given Miller's wrongful termination for shedding light on Defendants' flagrant mistreatment of mentally ill WHV inmates, Defendants must be taught that they cannot deprive an inmate of her constitutionally-guaranteed First Amendment rights. Mere compensatory damages would be insufficient to provide a true disincentive. *See, e.g., Grimm v. Lane* 895 F. Supp. 907 (S.D. Ohio 1995) (awarding punitive damages against officers who conspired to administer a beating

9

to prisoners who they felt needed an "attitude adjustment"). Accordingly, Miller seeks punitive damages in the amount of $200,000.

### 3.     **Declaratory Relief**

Miller seeks a declaratory judgment that the First Amendment prohibits Defendants from taking adverse action against POAs for reporting incidents in which corrections officers and staff abuse, neglect and/or mistreat mentally ill inmates, and an injunction prohibiting Defendants from further denying Miller employment or privileges based on the conduct that led to her termination as a POA. Miller also seeks reinstatement to her position as a POA.

Respectfully submitted,

| | |
|---|---|
| DICKINSON WRIGHT PLLC<br>Daniel D. Quick (P48109)<br>Kathleen A. Cieslik (P80024)<br>Alma Sobo (P81177)<br>2600 West Big Beaver Rd, Ste. 300<br>Troy, MI 48084<br>(248) 433-7200<br>dquick@dickinsonwright.com<br>kcieslik@dickinsonwright.com<br>asobo@dickinsonwright.com | AMERICAN CIVIL LIBERTIES<br>UNION FUND OF MICHIGAN<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>2966 Woodward Ave.<br>Detroit, MI 48201<br>(313) 578-6824<br>dkorobkin@aclumich.org<br>msteinberg@aclumich.org<br>*Attorneys for Plaintiff* |
| Emily L. Burdick (P81178)<br>Angelina R. Irvine (P81712)<br>500 Woodward Ave., Ste. 4000<br>Detroit, MI 48226<br>(313) 223-3500<br>eburdick@dickinsonwright.com<br>airvine@dickinsonwright.com<br>*Attorneys for Plaintiff* | |

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/ Emily L. Burdick*
EMILY L. BURDICK
