UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAREE MILLER #326122,

    Plaintiff,

v.

SHAWN BREWER, ROBIN
HOWARD, and RENATA PATTON,

    Defendants.

Case No. 2:15-cv-14164

Honorable Sean F. Cox
Magistrate Stephanie Dawkins Davis

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>2966 Woodward Ave.<br>Detroit, MI 48201<br>(313) 578-6824<br>dkorobkin@aclumich.org<br>msteinberg@aclumich.org<br>*Attorneys for Plaintiff* | DICKINSON WRIGHT PLLC<br>Daniel D. Quick (P48109)<br>Kathleen A. Cieslik (P80024)<br>Alma Sobo (P81177)<br>2600 West Big Beaver Rd, Ste. 300<br>Troy, MI 48084<br>(248) 433-7200<br>dquick@dickinsonwright.com<br>kcieslik@dickinsonwright.com<br>asobo@dickinsonwright.com |
| Brandon Waddell (P81494)<br>Michigan Dep't of Attorney General<br>State Operations Division<br>P.O. Box 30736<br>Lansing MI 48909<br>(517) 373-6434<br>*Attorney for Defendants* | Emily L. Burdick (P81178)<br>Angelina R. Irvine (P81712)<br>500 Woodward Ave., Ste. 4000<br>Detroit, MI 48226<br>(313) 223-3500<br>eburdick@dickinsonwright.com<br>airvine@dickinsonwright.com<br>*Attorneys for Plaintiff* |

# PLAINTIFF SHAREE MILLER'S PROPOSED FINDINGS OF FACT AND <u>CONCLUSIONS OF LAW</u>

Plaintiff Sharee Miller submits the following Proposed Findings of Fact and Conclusions of Law:

## I. Findings of Fact

1. Plaintiff Sharee Miller ("Plaintiff" or "Miller") has sued Defendants Shawn Brewer, Robin Howard, and Renata Patton (collectively, the "Defendants") for committing various adverse actions against Miller in violation of her First Amendment constitutional rights in retaliation for her external reporting of abuse and misconduct committed by Women's Huron Valley Correctional Facility ("WHV") corrections officers against mentally-ill prisoners after her internal reporting within WHV was ignored.

2. Miller is an inmate at WHV.

3. It is the policy of the Michigan Department of Corrections ("MDOC") to place mentally ill, suicidal, or self-injurious prisoners alone in a cell under one-on-one direct and continuous observation.

4. Since 2012, MDOC has employed Prisoner Observation Aides ("POA") who are specifically selected, specifically trained, and carefully screened prisoners to observe at-risk WHV prisoners.

5. WHV piloted the new POA program for MDOC in Michigan.

6. Defendant Patton is the Corrections Program Coordinator ("CPC") who was responsible for the POA program at WHV.

2

7. Pursuant to their job duties, POAs continuously observe the mentally ill prisoner, log their observations at fifteen minute intervals, and contact a corrections officer or other staff if the prisoner is in distress, or some other emergency arises.

8. POA rules and procedures require POAs to maintain appropriate confidentiality of their observations.

9. The POA confidentiality clause states:

Confidentiality is very important in prisoner observation. Relevant information should only be shared with staff or the next shift of Prisoner Observers. Inappropriate sharing of information about the observed prisoner will be grounds for immediate removal from the job. Prisoner Observers are only to discuss what the assigned prisoner says or does or what is said/done to the prisoner with housing staff on the unit or relief observers (staff or prisoner).

10. Miller began working as a POA on March 5, 2014 and earned $42 per month as a POA.

11. Defendant Patton trained Miller for the POA position.

12. During a POA shift in spring 2014, Miller witnessed WHV corrections officers strip and restrain Rochelle Bielby, a mentally ill inmate.

13. WHV corrections officers cuffed Bielby's wrists and ankles, and, using a chain, tied her wrists and ankles together behind her back with her knees bent while leaving her lying on her stomach.

14. Bielby remained hog-tied and screaming out in pain for nearly 5 hours.

3

15. During this time, Miller observed Bielby, still restrained, sliding off her bed.

16. Fearing for Bielby's safety and well-being, Plaintiff contacted Defendant Howard and Patton to report her observations.

17. Plaintiff contacted professional advocates outside WHV for help regarding the Bielby incident.

18. Defendant Howard, an Inspector at WHV, met with Plaintiff about her external reporting of the incident, but did not reprimand her.

19. During this meeting, Defendant Howard encouraged Plaintiff to tell the truth.

20. In mid-June 2014, Plaintiff was on duty as a POA and was tasked with observing inmate Darlene Martin.

21. Martin was a mentally-ill prisoner in WHV's segregation unit in mid-June 2014.

22. During the period that Plaintiff was on duty as a POA and observing Martin, WHV corrections officers turned off the water to Martin's cell.

23. Martin suffered from extreme dehydration, and Plaintiff asked Kelly Lichner, an on-duty nurse, to help Martin.

24. Nurse Lichner did not take Martin's vital signs or interact with Martin.

25. Martin went into cardiac arrest, and was rushed to the hospital.

26. Plaintiff reported Martin's neglect to Defendants Howard and Patton.

27. Plaintiff contacted professional advocates outside WHV to ask for assistance in connection with the Martin incident.

28. Plaintiff reported to the external professional advocates that Martin was not eating or drinking, which WHV corrections officers were aware of, and that Martin continuously begged for food and drink.

29. On July 16, 2014, Defendant Patton informed Plaintiff that she was terminated from her position as a POA at the directive of Defendant Howard.

30. The written documentation regarding Plaintiff's termination, signed by Defendant Patton, states:

> Prisoner Miller 326122 began working as a prisoner observation aide on 3/5/2014. On 7/11/2014, classification was notified by Inspector Howard that prisoner Miller has engaged in sharing confidential information regarding prisoners she had observed with persons other than staff or a relieving POA. According to Prisoner Observation Rules and Procedures signed by prisoner Miller on 4/8/2014 Section "Away from the Job" Paragraph 1 it states that "Confidentiality is very important in prisoner observation. Relevant information should only be shared with staff of the next shift of prisoner Observers. Inappropriate sharing of information about the observed prisoner will be grounds for immediate removal from the job. Prisoner Observers are only to discuss what the assigned prisoner says/does or what is said/done to the prisoner with housing staff on the unit or relief observes (staff or prisoner)." Based on information received from Inspector Howard's office, it has been determined that prisoner Miller did not comply with the

5

above confidentiality statement, thus she is being removed from the POA position effective immediately.

## II. Conclusions of Law

31. Retaliation against a prisoner based upon her exercise of a constitutional right violates the Constitution. *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002).

32. A First Amendment retaliation claim is established where (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

33. Protected conduct is an individual right protected by the Constitution with which the government generally cannot interfere. *Thaddeus-X*, 175 F.3d at 387.

34. Under the *Pickering* test for protected speech, a plaintiff's speech is only entitled to protection if it "addresse[s] a matter of public concern." *Delvin v. Kalm*, 531 Fed. App'x. 697, 704 (6th Cir. 2013) (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983). Second, the plaintiff must show that the speech was made "outside the duties of employment." *Delvin*, 531 Fed. App'x. at 704 (citing *Garcetti v.*

6

*Ceballos*, 547 U.S. 410, 424 (2006)). Third, "the court must balance the interests of the public employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Delvin*, 531 Fed. App'x. at 704 (internal citation omitted). Fourth, the plaintiff must show [that] his "speech was a substantial or motivating factor" in the employer's decision to terminate him. *Id.* at 704.

35. By reporting the Bielby and Martin incident externally, Martin was voicing concern regarding Bielby's and Martin's health and safety as a citizen on a "matter of public concern."

36. Miller corresponded about the incidents outside of her official employment duties as a POA.

37. Miller's interest in speaking out about mistreatment of inmates outweighs WHV's interest in "promoting the efficiency of the public services it performs through its employees." *Leary v. Daeschner*, 228 F3d 729, 737 (6th Cir. 2000).

38. Miller was terminated as a direct result of reporting inmate mistreatment to outside advocates.

39. Miller's speech constitutes protected conduct under the *Pickering* test.

7

40. Under the *Turner* analysis for protected speech, there are four factors to be used in determining the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising rights that remain open to inmates; (3) whether accommodating the asserted right will have a significant "ripple effect" on fellow inmates or prison staff; and (4) whether there is a ready alternative regulation that fully accommodates the prisoners' rights at a *de minimis* cost to the valid penological interest. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

41. Even when a prison regulation is not wholly invalid on its face, the *Turner* analysis may demonstrate that its application in a certain instance is unreasonable and, thus, unconstitutional. *Flagner v. Wilkinson*, 241 F.3d 475, 483 fn.5 (6th Cir. 2001).

42. Dr. Jeffrey Metzner's testimony shows that there is no valid, rational connection between WHV's interest in protecting an inmate's privacy and preventing POAs from disclosing abuse and neglect of those inmates. The broad (and unclear) confidentiality language, as applied to this case, is an exaggerated response to any real prison concern.

43. Dr. Metzner's testimony demonstrates that there are exceptions to confidentiality standards that include those mandated by statute or case law such as

8

mandatory child abuse reporting laws, duty to protect situations or in order to protect the patient or other persons. Dr. Metzner testimony shows that the POA Program's confidentiality standard would likely have similar exceptions for protecting patient or other persons in unsafe situations.

44. As implemented by WHV, the confidentiality policy leaves POAs with no alternative avenue available for reporting inmate abuse and neglect if it is not addressed by WHV officials.

45. Allowing POAs to report abuse and neglect to outside authorities, especially when attempts at internal reporting are ignored, would not have significant ramifications on the liberty of others or on the use of the WHV's resources for preserving order as WHV could screen meritless complaints and investigate concerns needing further inspection at minimal cost.

46. WHV could devise procedures for reporting abuse to outside authorities when internal reporting is insufficient, while still prohibiting POAs from "inappropriately" disclosing confidential information, for instance in situations that do not involve abuse or do not involve initial attempts to address problems internally.

47. As is clear from the record, Miller was terminated from her POA position for externally reporting the abuse and neglect she witnessed after the internal channels ignored her complaints.

48. Miller's speech satisfies the *Turner* test.

9

49. Miller is entitled to compensatory and punitive damages, and declaratory relief as redress for Defendants' constitutional violations.

50. The trier of fact must tailor compensation "for injuries caused by the deprivation of constitutional rights" according to the particular interests being protected. *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

51. Miller's evidence shows that Defendants terminated Miller in retaliation for reporting inmate abuse to advocates outside WHV after repeatedly ignoring misconduct Miller reported internally, despite the fact that Defendant Howard encouraged Miller to report truthfully to outside advocacy groups.

52. Fair and reasonable compensatory damages are available for First Amendment violations under 42 U.S.C. § 1983 where the plaintiff's injury was caused by the violation of a constitutional right. *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015); *Waije v. City of Winchester, Kentucky*, 927 F.2d 10 (6th Cir. 1987).

53. Miller is entitled to compensatory damages based upon her wrongful discharge as a POA in retaliation for reporting inmate abuse externally.

54. Miller is entitled to $2,562.00 in compensatory damages, which she would have earned as a POA but for her wrongful discharge.

55. Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

*Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997) (*quoting Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983)).

56. Punitive damages may also be awarded "for the purpose of deterring or punishing a violation of constitutional rights." *Carey*, 435 U.S. at 257 fn. 11; *see also In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1272 (2d Cir.), *cert. denied*, 502 U.S. 920 (1991).

57. Mere compensatory damages would be insufficient to provide a true disincentive for Defendants, given Miller's wrongful termination for shedding light on mistreatment of mentally ill WHV inmates.

58. Miller is entitled to punitive damages in the amount of $200,000.

59. Miller is entitled to a declaratory judgment that the First Amendment prohibits Defendants from taking adverse action against POAs for reporting incidents in which corrections officers and staff abuse, neglect and/or mistreat mentally ill inmates, and an injunction prohibiting Defendants from further denying Miller employment or privileges based on the conduct that led to her termination as a POA.

60. Miller is entitled to reinstatement to her position as a POA.

61. The Court finds that Miller has satisfied her burden of proving by a preponderance of evidence that Defendants violated her First Amendment rights.

Respectfully submitted,

__/s/ Emily L. Burdick_
DICKINSON WRIGHT PLLC
Emily L. Burdick (P81178)
Angelina R. Irvine (P81712)
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500
eburdick@dickinsonwright.com
airvine@dickinsonwright.com

Daniel D. Quick (P48109)
Kathleen A. Cieslik (P80024)
Alma Sobo (P81177)
2600 West Big Beaver Rd, Ste. 300
Troy, MI 48084
(248) 433-7200
dquick@dickinsonwright.com
kcieslik@dickinsonwright.com
asobo@dickinsonwright.com
*Attorneys for Plaintiff*

AMERICAN CIVIL LIBERTIES
UNION FUND OF MICHIGAN
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
2966 Woodward Ave.
Detroit, MI 48201
dkorobkin@aclumich.org
msteinberg@aclumich.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/ Emily L. Burdick*
EMILY L. BURDICK
