UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHAREE MILLER #326122,

    Plaintiff,

v.

SHAWN BREWER, ROBIN HOWARD, and RENATA PATTON,

    Defendants.

No. 2:15-cv-14164

HON. SEAN F. COX

MAG. STEPHANIE DAWKINS DAVIS

---

AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Attorneys for Plaintiff
2966 Woodward Avenue
Detroit MI 48201
(313) 578-6824

Brandon W. Waddell (P81494)
James E. Long (P53251)
John L. Thurber (P44989)
Attorney for Defendants
Michigan Dep't of Attorney General
MDOC Division
P.O. Box 30754
Lansing MI 48909
(517) 335-7573

DICKINSON WRIGHT PLLC
Daniel D. Quick (P48109)
Kathleen A. Cieslik (P80024)
Attorneys for Plaintiff
2600 West Big Beaver Road
Suite 300
Troy, MI 48084-3312
(248) 433-7242

DICKINSON WRIGHT PLLC
Emily L. Turbiak (P81178)
Alma Sobo (P81177)
Angelina R. Irvine (P81712)
Attorneys for Plaintiffs
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500

                                    /

# DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOW COME Defendants Howard, Patton and Brewer, through counsel, and propose the following findings of fact and conclusions of law to be made by the Court under Fed R Civ P 52(a)(1).

I. **Findings of Fact**[1]

    A. **Parties**

        1. The plaintiff, Sharee Miller, began her incarceration in the Michigan Department of Corrections (MDOC) in 2001 after having been convicted of First-Degree Murder. She is currently housed at the Women's Huron Valley Correctional Facility (WHV), located in Ypsilanti, Michigan.

        2. Defendant Robin Howard at times relevant to this suit was an Inspector at WHV. She also serves as the Prison Rape Elimination Act (PREA) coordinator for the facility. Her duties include facilitating safety and security of the facility, both staff and prisoners.

        3. Defendant Renata Patton at times relevant to this suit was a Corrections Program Coordinator (CPC) at

---

[1] Facts are derived from the anticipated testimony from all witnesses and anticipated exhibits to be admitted at trial.

2

WHV. Her duties included classifying prisoners who arrived at the prison. Also, Patton assigns prisoner jobs. Specific to the Prisoner Observation Aid (POA) job, Patton would hire and fire prisoners under the direction of Inspector Howard, and also facilitate the computer-based training. She did not have day-to-day dealing with POAs and they did not report to her.

**4.** Defendant Shawn Brewer is currently the Warden at WHV and is named in his official capacity only. Warden Brewer has no factual involvement in this suit.

## II. Facts – Chronology of Events

**1.** Plaintiff was a Prisoner Observation Aide (POA), where she was responsible for observing and reporting about the status of other prisoners who were placed on one-on-one observation status because the prisoners were either suicidal or exhibited self-injurious behavior. As a POA, Miller was required to write down her observations of the prisoner she was assigned to observe, and to report to MDOC staff any distress that

the observed prisoner may be experiencing or any other emergency.

2. On April 8, 2014, Plaintiff received and signed the Prisoner Observation Rules and Procedures. The Prisoner Observation Rules and Procedures provide, in relevant part, as follows:

> Due to the seriousness and sensitivity of the observation requirement, Prisoner Observers may be removed from the Prisoner Observer Program at any time.
>
> The Prisoner Observer will document on the Prisoner Observation Documentation Form at the start of the shift. He/she will sit in a chair at the door and observe the prisoner continuously, only doing those activities allowed. When 15 minutes have passed, the Prisoner Observer will document his/her visual observation of the prisoner in the observer log (or more if an unusual or significant event occurs). Prisoner Observers shall not write, draw, doodle, or write unrelated information on the sheet, such as when medications are given to the prisoner, what medications are given to the prisoner, what staff members discuss with the prisoner, etc. Prisoner Observers should simply document what they see the assigned prisoner doing. At the end of each shift, the Prisoner Observer will be given the opportunity to discuss his/her experience with Shift Command/Corrections Officer. This debriefing gives the Prisoner Observer the opportunity to process any positive or negative

>reactions to the incident. Confidentiality is very important in prisoner observation. Relevant information should only be shared with staff or the next shift of Prisoner Observers.
>
>Inappropriate sharing of information about the observed prisoner will be grounds for immediate removal from the job. Prisoner Observers are only to discuss what the assigned prisoner says/does or what is said/done to the prisoner with housing staff on the unit or relief observers (staff or prisoner).

3. During the course of her POA assignments, Plaintiff contends that she observed what she believed to be mistreatment of a prisoner that she was assigned to observe. However, Defendant Patton and Howard never received any kites from Plaintiff.

4. In the course of her duties as Inspector of WHV, which included monitoring prisoner correspondence, including prisoner telephone calls and emails, Defendant Howard became aware that Plaintiff had contacted Humanity for Prisoners – an outside advocacy group – and disclosed confidential information that Plaintiff had learned during the course of her POA assignment about the prisoner that

5

Plaintiff alleged had been mistreated. Based on Plaintiff's correspondence to Humanity for Prisoners, Howard investigated Plaintiff's report of alleged mistreatment of the prisoner by reviewing video and critical incident reports to determine the veracity of the Plaintiff's allegations. Howard wanted to determine if WHV staff was indeed mistreating the prisoner. After investigating, Howard determined that there was no credibility to Plaintiff's allegations.

5. On or about June 4, 2014, Howard met with Plaintiff. Although Howard concluded that Plaintiff breached her POA confidentiality agreement, she did not recommend removing Plaintiff from her POA position. Howard did remind Plaintiff, however, that because she signed the confidentiality agreement, she was not to report confidential information that she learned in the course of her POA assignment to those outside of the prison. Howard did however notify Plaintiff that

she was allowed to contact outside agencies, she could just not disclose confidential information.

6. Notwithstanding that Howard had reminded Plaintiff not to disclose confidential information that she learned as a POA, Plaintiff thereafter made a telephone call to Carol Jacobsen, a prisoner-rights advocate indicating, falsely, that another prisoner, whose condition Plaintiff became aware of in her role as a POA, had died because she was allegedly deprived of food and water. On June 23, 2014 and June 24, 2014, Plaintiff also sent email messages to an individual named "Doug" at Humanity for Prisoners, a prisoner rights organization, where she revealed additional information about the prisoner on POA status, including: the prisoner's identity, why the prisoner was placed in one-on-one observation, what food the prisoner was offered, the prisoner's physical and mental state, that the prisoner was issued

7

        medication, and what other POA's had reported about the prisoner.

7. Inspector Howard became aware of Plaintiff's correspondence with Carol Jacobsen and Doug and, after reviewing Plaintiff's written and verbal correspondence, Howard determined that Plaintiff again violated the terms of the POA confidentiality agreement. As a result, Howard instructed Defendant Patton to remove Plaintiff from her POA assignment. On July 16, 2014, Plaintiff was informed that she was removed from her POA position for breach of confidentiality.

8. Due to her role as a CPC, Patton was the individual who actually terminated Plaintiff, however it was under the direction of Inspector Howard.

## III. Conclusions of Law.

Plaintiff claims are First Amendment retaliation against Howard and Patton and a claim for injunctive relief against Defendant Brewer

to reinstate her to the POA program. To establish a First Amendment retaliation claim, a plaintiff must show that:

(1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

All prongs were at issue at trial. Plaintiff alleges that Defendants fired her from her POA job in retaliation for calling outside agencies to complain of what she considered prisoner abuse. Defendants maintain that Plaintiff was fired because she disclosed confidential information regarding other prisoners that she obtained through her POA position, and the calling of outside agencies on its face is not the reason for her termination or a protected conduct.

"[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one," of a First Amendment retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Here, because Plaintiff violated a legitimate

9

prison regulation by disclosing confidential information learned from her POA assignment, she did not engage in First Amendment protected conduct and, accordingly, she fails to establish the first element of a First Amendment retaliation claim.

To the extent Plaintiff contends that the POA confidentiality agreement is not a "legitimate prison regulation," because it might prevent a prisoner from complaining about the alleged mistreatment of other prisoners, her claims are without merit. Importantly, the POA confidentiality agreement does not preclude a prisoner from filing complaints or complaining to outside agencies about alleged prisoner mistreatment. It does, however, prevent a POA from disclosing confidential information. That is, Plaintiff was not precluded from complaining that she believed prisoners were being mistreated at WHV, and she was not precluded from complaining about perceived mistreatment of prisoners based on her own observations and what she learned *outside* of her role as a POA.

But here, the POA confidentiality agreement is intended to keep protected health information confidential, as well as keep confidences that are shared by the observed prisoner or learned by the POA that

could impact the safety and security of the observed prisoner and/or WHV.

Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), protected health information includes individually identifiable health information that relates to an individual's past, present, or future physical or mental health or condition and the provision of health care to the individual, and that identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual. 45 C.F.R. § 160.103. Here, Plaintiff arguably violated HIPAA by revealing to an outside non-public organization the identity and physical and mental condition of a prisoner she learned about because of her POA assignment. The POA confidentiality agreement furthers the aim of HIPAA to keep medical information confidential, and also furthers WHV's goal of maintaining safety and security throughout the facility. A POA revealing information learned in her role, such as the prisoner's mental or physical limitations, vulnerabilities, or impairments, could be used against the prisoner and result in safety and security issues. Thus, the MDOC has a legitimate penological reason for keeping such information

confidential from disclosure to anyone not directly involved with the prisoner's custody and care.

Plaintiff is not the only POA to have violated the POA confidentiality agreement and been terminated from the POA assignment at WVH. Since Plaintiff's removal from her POA assignment, there have been at least two other POAs that were removed from their POA assignments because they too disclosed confidential information that they learned as POAs. The importance of confidentiality is stressed with the potential POAs as part of their training and is again emphasized when they sign the POA confidentiality agreement.

Here, Plaintiff was removed from her POA assignment not because she complained about the alleged mistreatment of other prisoners, but because she violated a legitimate prison rule. Accordingly, Plaintiff did not engage in protected conduct, as she had no authority in her POA role to disclose the confidential information that she did. *Thaddeus-X*, 175 F.3d at 395 ("prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern. See *Turner v. Safley*, 482 U.S. 78, 107 S.

Ct. 2254, 96 L.Ed.2d 64 (1987). Therefore, if a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct," and cannot proceed beyond step one.)

The second element of a retaliation claim requires a "causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." "Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue—that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity."

The facts at trial revealed that none of the Defendants were motivated by Plaintiff speaking to outside agencies. The decision to terminate Plaintiff was due to her disclosure of personal and confidential health information to these outside agencies, some of which, in the case of Ms. Martin was false.

It is irrelevant whether Plaintiff sincerely believes that prisoners were mistreated at WHV. Plaintiff does not contend that any of the individually named defendants mistreated prisoners, but instead alleges that she complained to individuals outside of WHV when MDOC

13

staff within WHV failed or refused to address the alleged prisoner mistreatment. Once the Plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, (1977). If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail. *Thaddeus-X.*

Inspector Howard, who was responsible for Plaintiff's removal from the POA position, indicates that "Plaintiff was terminated from her position as a POA because she, without proper authorization, disclosed confidential prisoner information to individuals outside the Michigan Department of Corrections." Inspector Howard identifies specific communications upon which she relied to terminate Plaintiff from her POA position. In addition to the June 23, 2014 and June 24, 2014 JPay communications, Howard relied on the telephone communications to remove Plaintiff from her POA assignment. Inspector Howard did not terminate Plaintiff from her POA position because she complained about prisoner mistreatment in general, but rather because of the disclosure of confidential information.

14

Contrary to Plaintiff's arguments, before Howard terminated Plaintiff from her POA position, Howard was aware that Plaintiff had previously complained about prisoner mistreatment and revealed confidential information that she had learned as a POA. Instead of terminating Plaintiff at that time, however, Howard counseled Plaintiff and reminded her that she signed the POA confidentiality agreement. There is no evidence to refute that Howard's reason for terminating Plaintiff from the POA assignment was because of the disclosure of confidential information.

There is no direct evidence of retaliation. Defendants have all denied that they retaliated against Plaintiff and their testimony has been credible. Plaintiff has also failed to prove her claim with circumstantial evidence. "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." Here, the validity of the claims of abuse that Plaintiff complained of means very little. Defendants have not been sued for claims of excessive force or deliberate indifference, but retaliation, and specifically the firing of Plaintiff from her POA position. Defendants have established with testimony and the words recorded out of

15

Plaintiff's own mouth, that Howard told her she could still contact agencies outside of the prison, but she could not disclose confidential information.

Plaintiff is unable the establish the elements necessary for a First Amendment retaliation claim.

## DAMAGES & CONCLUSION

For the reasons discussed above, Defendants Howard, Patton and Brewer request that this Court enter judgment in their favor because Plaintiff failed to establish her retaliation claim at trial.

                                      Respectfully submitted,

                                      Dana Nessel
                                      Attorney General

                                      *s/ Brandon W. Waddell*
                                      Assistant Attorney General
                                      Attorney for Defendants
                                      MDOC Division
                                      P.O. Box 30754
                                      Lansing, MI 48909
                                      517.335.7573
                                      waddellb@michigan.gov
                                      P81494

Dated: July 18, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such. I also mailed the foregoing paper via US Mail to all non-ECF participants.

*s/Brandon W. Waddell*
Brandon W. Waddell
Assistant Attorney General
Attorney for Defendants
