# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

SHAREE MILLER,

    Plaintiff,

v.

SHAWN BREWER, *et al.*

    Defendants.

Case No. 2:15-cv-14164

Hon. Sean F. Cox

Magistrate Judge Stephanie Dawkins Davis

---

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>2966 Woodward Ave.<br>Detroit, MI 48201<br>(313) 578-6824<br>dkorobkin@aclumich.org<br>msteinberg@aclumich.org<br>*Attorneys for Plaintiff* | DICKINSON WRIGHT PLLC<br>Daniel D. Quick (P48109)<br>Kathleen A. Cieslik (P80024)<br>Alma Sobo (P81177)<br>2600 West Big Beaver Rd, Ste. 300<br>Troy, MI 48084<br>(248) 433-7200<br>dquick@dickinsonwright.com<br>kcieslik@dickinsonwright.com<br>asobo@dickinsonwright.com |
| Brandon Waddell (P81494)<br>Michigan Dep't of Attorney General<br>CLEE Division<br>P.O. Box 30736<br>Lansing MI 48909<br>(517) 373-6434<br>waddellb@michigan.gov<br>*Attorney for Defendants* | Emily L. Burdick (P81178)<br>Angelina R. Irvine (P81712)<br>500 Woodward Ave., Ste. 4000<br>Detroit, MI 48226<br>(313) 223-3500<br>eburdick@dickinsonwright.com<br>airvine@dickinsonwright.com<br>*Attorneys for Plaintiff* |

---

## **SETTLEMENT AGREEMENT AND RELEASE**

1

This Settlement Agreement and Release ("Agreement") is entered into between Shawn Brewer, Robin Howard, and Renata Patton (collectively, "Defendants") and Sharee Miller ("Plaintiff"), including any successors, assigns, parent, or related entities who may have or claim to have an interest in the subject matter of this dispute.  Defendants, the State (as hereinafter defined), and Plaintiff (as hereinafter defined) may be referred to jointly as the "Parties."  Plaintiff's counsel of record are DICKINSON WRIGHT PLLC and attorneys from the AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN.

## RECITALS

**WHEREAS,** there has been a dispute between the Parties arising from an alleged violation of Plaintiff's constitutional rights and resulting in a lawsuit pending in the United States District Court for the Eastern District of Michigan, Southern Division, Case No. 2:15-cv-14164, entitled *Miller v. Brewer et al.,* ("the Lawsuit").

**WHEREAS,** the Parties desire to enter into this Agreement in full and complete settlement, discharge, and release of all claims which were pled, or could have been pled, in the Lawsuit.

**WHEREAS,** this Agreement is entered into on behalf of Defendants and the State of Michigan, including the State's departments, divisions, agencies, bureaus, sections, offices, and employees, insurers facilities, departments or attorneys (collectively, "State") and by Plaintiff and her successors and assigns, and any other

entity or person who could lawfully make a claim against Defendants or the State of Michigan by or through Plaintiff related to the subject-matter of the Lawsuit.

## AGREEMENT

## SECTION 1 – RELEASE AND DISCHARGE

1.1.   In consideration of and upon receipt by Plaintiff and counsel of the payment set forth in Section 2, Plaintiff hereby completely, fully, and without reservation, releases and forever discharges Defendants and the State from any and all claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses, legal fees, and compensation of any nature whatsoever, whether based in tort, contract, constitutional violation, or any other theory of recovery, which Plaintiff now has, or which may hereafter accrue or otherwise be acquired, which are related to or based in any way upon the Lawsuit, from the beginning of time through and including the date of the signing of this Agreement.

1.2.   This release is fully binding and a complete settlement among the Parties, indemnitors, and their heirs and assigns.

1.3.   Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release.  Plaintiff expressly waives and assumes the risk of any and all claims for damages which exist as of this date arising out of the incident, which is the subject of the above-captioned matter, but which Plaintiff does not know or suspect to exist whether through ignorance, oversight, error, negligence or

3

otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Agreement. Plaintiff further agrees to accept payment of the sum specified herein as a complete compromise of matters involving disputed issues of law and fact which are related to or based in any way upon the Lawsuit, from the beginning of time through and including the date of the signing of this Agreement. Plaintiff assumes the risk that the facts or law may be other than as Plaintiff believes.

1.4. It is understood and agreed to by the Parties that this Agreement is a compromise of disputed claims, and the payment is not to be construed as an admission of liability on the part of Defendants, the State, or the State's employees or agents, by whom liability is expressly denied.

1.5. It is understood and agreed that this is a settlement of disputed claims solely for the purpose of resolving the Lawsuit. The Parties agree that the facts and terms of this Agreement are irrelevant to any other controversy that may be pending between the parties now or at any time in the future.

## **SECTION 2 - PAYMENT**

2.1. In consideration of the release set forth above, the Michigan Department of Corrections ("MDOC") agrees to pay to Plaintiff the sum of $6,000.00 (six thousand dollars), which will be made within sixty (60) days of entry of final dismissal in this case. The sum will be provided by check made out to

SHAREE MILLER and will be mailed UPS overnight to Plaintiff at: Women's Huron Valley Correctional Facility, 3201 Bemis Rd., Ypsilanti, MI 48197.

2.2. In consideration of the release set forth above, the MDOC agrees to give Plaintiff the option of reinstatement as a Prisoner Observation Aide ("POA") within seven (7) days of entry of dismissal in this case.

2.3. In consideration of the release set forth above, the MDOC agrees to remove any and all records and notations regarding Plaintiff's termination as a POA in July 2014 within seven (7) days of entry of final dismissal in this case.

2.4. In consideration of the release set forth above, the MDOC agrees to provide mandatory annual training to prison officers and staff at Women's Huron Valley regarding prisoners with mental health illnesses, and the MDOC will reasonably determine the substance of the training.

2.5. In consideration of the release set forth above, within seven (7) days of entry of final dismissal in this case, the MDOC agrees to revise the POA rules and procedures contract to include:

> Confidentiality is very important in prisoner observation. Prisoner Observers may discuss what the assigned prisoner says/does or what is said/done to the prisoner during observation with housing staff on the unit or relief observers (staff or prisoner). Inappropriate sharing of information by the Prisoner Observer about the observed prisoner will be grounds for immediate removal from the job. The Prisoner Observer should report issues or concerns regarding the observed maltreatment by staff in

5

writing to the shift command, AND the Warden's office. All such written reports sent to shift command and the Warden's office must be maintained in writing in the Prisoner Observer's prison file.

After reporting to shift command and the Warden's office, the Prisoner Observer may share information regarding an observed prisoner with a governmental agency, corrections ombudsman, health oversight agency, or a state-designated protection and advocacy service pursuant to federal mandate (See DD Act, 42 U.S.C. § 6000 et seq., and the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801 et seq.).

2.6. MDOC agrees to secure execution of the revised contract from all POAs. Upon execution of this agreement, the Prisoner Observer will receive training or be provided instruction regarding the confidentiality clause of this agreement.

2.7. In consideration of the release set forth above, MDOC agrees to inform Plaintiff's counsel in writing when it has completed performance of its obligations under paragraphs 2.2, 2.3, 2.4, 2.5, and 2.6 of this agreement.

2.8. In consideration of the release set forth above, the MDOC agrees to additional pay to Counsel the sum of $60,000.00 (sixty-thousand dollars), which will be made within sixty (60) days of entry of final dismissal in this case. The sum will be provided to Dickinson Wright PLLC via wire to:



2.9. The State of Michigan is authorized to deduct any institutional debt that the Plaintiff has incurred, victim restitution, and court filing fees that Plaintiff may owe in State or Federal Counts. The State of Michigan waives any right to collect any portion of the payments made under this Agreement, including under the State Correctional Facilities Reimbursement Act ("the Act"), MCL 800.401 *et seq.*, or to otherwise setoff, recoup or claim as against said funds.

2.10. The payment in § 2.1 and § 2.8 and subject to the limitation in § 2.9 as well as the relief in § 2.2 through § 2.6 is in complete settlement of all damages and costs arising out of the Lawsuit, including all attorney fees.

### SECTION 3 - DISMISSAL WITH PREJUDICE

3.1. The Parties agree that the Lawsuit shall be dismissed with prejudice, without an award of attorney fees or costs to either Party other than the agreed upon amount to Counsel identified in § 2.8, and the Parties must execute and file a Stipulation of Dismissal with prejudice of the Lawsuit within fourteen (14) days of

the execution of this Agreement, providing that the Court shall retain jurisdiction to enforce the terms of this agreement and, in the event of a breach thereof, Plaintiff shall be permitted to re-open the matter to seek immediate enforcement of this agreement and as part of which will recover actual attorney's fees and costs.

3.2.  Plaintiff agrees not to pursue any appeal in the Michigan Court of Appeals, Michigan Supreme Court, Sixth Circuit Court of Appeals, or United States Supreme Court regarding the Lawsuit.

## SECTION 4 - MUTUAL UNDERSTANDING OF AGREEMENT

4.1.  If there is an ambiguity or question of intent or interpretation, this Agreement must be construed as if drafted jointly by the Parties.  No presumption or burden of proof may arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement.

## SECTION 5 – GOVERNING LAW

5.1.  This Agreement must be construed, interpreted, and governed in accordance with the laws of the State of Michigan.

## SECTION 6 – ADDITIONAL DOCUMENTS & DUTY TO COOPERATE

6.1.  The Parties agree to cooperate fully and execute any and all documents and to take all additional actions necessary to give full force and effect to the basic

terms and intent of this Agreement including, but not limited to, dismissal with prejudice of the Lawsuit.

6.2    After the payments specified in § 2.1 and § 2.8, subject to the limitation in § 2.9 are made, Plaintiff agrees to sign documentation confirming only that the payment has been made, if requested to do so by Defendants, MDOC, or the State.

## SECTION 7 – ENFORCEMENT OF SETTLEMENT

7.1.    It is understood and agreed to by and between the Parties that the Court will retain jurisdiction over this matter for purposes of enforcing this Agreement.

## SECTION 8 – ENTIRE AGREEMENT AND BINDING EFFECT

8.1.    This Agreement contains the entire agreement between the Parties and any and all discussions, understandings or agreement, whether written or oral, had by the Parties with respect to the subject matter are merged into this Agreement. This Agreement is binding on and inures to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each. This Agreement cannot be amended without the express written consent of both Parties.

## SECTION 9 - SAVINGS AND SEVERABILITY CLAUSE

9.1.    If any of the provisions of this Agreement are ever found to be legally unenforceable by a court of competent jurisdiction, all other aspects of this Agreement remain in full force and effect.

## SECTION 10 – TAX CONSEQUENCES

10.1. The Parties make no representations and provide no guarantee or assurance regarding tax consequences of the payments specified in § 2.1 and/or § 2.8 and subject to the limitation in § 2.9. Specifically, payments specified in § 2.1 and/or § 2.8 shall be subject to any offset for liens which the Michigan Department of Treasury is empowered to exercise, for such things as outstanding state or federal income taxes.

## SECTION 11 – VOLUNTARY ACT

11.1. The Parties enter into this Agreement voluntarily and without duress, restraint, intimidation, or compulsion.

11.2. The Parties acknowledge that they have read this Agreement in its entirety and have apprised themselves of sufficient information to intelligently decide whether to execute this Agreement. The decision to execute this Agreement is not predicated on or influenced by any declarations or representations not set forth in this Agreement. The Parties understand the terms of this Agreement and have executed it freely, voluntarily, and without duress, restraint, intimidation, or compulsion.

## SECTION 12 – HEADINGS

12.1. Headings in this Agreement are for reference purposes only and are not intended to affect the meaning or interpretation of this Agreement.

## SECTION 13 – WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

13.1.  Plaintiff represents and warrants that no other person has, or has had, any interest in the claims, demands, obligations or causes of action referred to in this Agreement, except as otherwise set forth herein.  Plaintiff further represents and warrants that she has the sole right and exclusive authority to execute this Agreement and receive the sum specified in it.  Plaintiff further represents that she has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

## SECTION 14 – EFFECTIVENESS

14.1.  This Agreement is effective as of the last date executed below.  Any copy or facsimile of a signature of a party to this Agreement must be treated as, and will have the same force and effect as, an original signature.

14.2.  This Agreement may be signed in separate counterparts, which may then be taken together to constitute a complete and binding agreement.

14.3.  By signing below, each signatory affirmatively represents that he or she has full authority to sign on behalf of the party for whom signature is made, is fully authorized to bind that party to this Agreement, and has been fully informed about, and fully understands, the terms of this Agreement.

14.3. By signing below, each signatory affirmatively represents that he or she has full authority to sign on behalf of the party for whom signature is made, is fully authorized to bind that party to this Agreement, and has been fully informed about, and fully understands, the terms of this Agreement.

For Plaintiff:

By: *Sharee Miller*
Sharee Miller
Dated: 7-25-19

Approved as to form:

By: *Emily L. Burdick*
Emily L. Burdick (P81178)
Attorney for Plaintiff

Dated: 7/25/19

For Defendants Shawn Brewer, Renata Patton, and Robin Howard:

By: *Brandon Waddell*
Name: Brandon Waddell
Its: Counsel for Defendants
Dated: 7/26/19

By: *Brandon Waddell*
Brandon Waddell (P81494)
Assistant Attorney General
Attorney for Defendants
Dated: 7/26/19